**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 20-cv-02769-RM-NYW

FIVE STAR CHEMICALS & SUPPLY, LLC,

      Plaintiff,

v.

5 STAR ENTERPRISE, INC., d/b/a 5 STAR CHEMICALS,

      Defendant.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

Magistrate Judge Nina Y. Wang

      This matter comes before the court for recommendation on Plaintiff Five Star Chemicals & Supply, LLC ("Plaintiff")'s Motion for Default Judgment, Permanent Injunction, Statutory Damages, Costs, Attorneys' Fees, and Other Equitable Relief Against Defendants [sic] 5 Star Enterprise, Inc. (the "Motion" or "Motion for Default Judgment") [#16,[1] filed February 8, 2021]. The undersigned considers the Motion pursuant to 28 U.S.C. § 636(b), the Order Referring Case dated September 14, 2020 [#5], and the Memorandum dated February 8, 2021. [#17]. Upon review of the Motion, the record before the court, and the applicable case law, this court respectfully **RECOMMENDS** that the Motion for Default Judgment be **DENIED** and that this case be **DISMISSED without prejudice** for lack of personal jurisdiction over Defendant.

---

[1] This court uses the convention [#__] to refer to docket entries in the District of Colorado's Electronic Court Filing ("ECF") system.

## BACKGROUND

This civil action arises out of the alleged infringement of Plaintiff's "FIVE STAR" trademark by Defendant 5 Star Enterprise, Inc. d/b/a 5 Star Chemicals ("Defendant"). [#1 at ¶¶ 14-16, 19, 35, 40]. In the Complaint, Plaintiff alleges the following:[2]

Plaintiff is a manufacturer of cleaning and sanitizing chemicals in the food and beverage industry, "with [a] particular focus on breweries." [*Id.* at ¶ 13]. Plaintiff has manufactured and sold its products using the FIVE STAR mark since 1980, [*id.* at ¶ 17], and has used the domain name www.fivestarchemicals.com since at least August 30, 2001. [*Id.* at ¶ 76]. In 2008, Plaintiff applied for registration of the FIVE STAR trademark, designating a date of first use in commerce of May 27, 1994,[3] and the mark was registered on November 10, 2009. [*Id.* at ¶ 14]. The FIVE STAR mark was "inadvertently abandoned" on June 17, 2016. [*Id.*]. Upon discovering this inadvertent abandonment, Plaintiff filed a new application for "[its] name and logo" on July 8, 2019. [*Id.* at ¶ 15]. On March 17, 2017, Plaintiff filed a new application for the FIVE STAR mark. [*Id.* at ¶ 16]. The mark was registered on July 3, 2018 in class 001 for "[c]hemicals for use in the manufacture of beer, wine, cider, liquor, spirits, mead, and other alcoholic and non-alcoholic beverages" and class 005 for "[s]anitizing preparations for food and beverage industry and homebrewing use." [*Id.*]. Plaintiff states that it "has expended tremendous time, energy, and money in the marketing and advertising of its product under the FIVE STAR mark." [*Id.* at ¶ 18].

---

[2] "A default amounts to an admission of liability, and all well-pleaded allegations in the complaint pertaining to liability are deemed true." *PopSockets LLC v. Y.E.F. Trading Inc.*, No. 19-cv-03636-CMA-SKC, 2020 WL 6487418, at *1 (D. Colo. Nov. 4, 2020) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)).

[3] The Complaint does not explain why the registered first use in commerce is 14 years after Plaintiff began selling its products.

Defendant is a Georgia corporation formed in 2006. [*Id.* at ¶ 19]. Since at least 2009, Defendant has operated a website using the domain name www.5starchemicals.com. [*Id.* at ¶ 78]. On its website, Defendant appears to sell, among other items, an "Eco Green Lime & Concrete Remover." [*Id.* at ¶ 24]. This product is marketed for use in removing milkstone and beerstone, which "are hard deposits that accumulate on imperfectly cleansed dairy and brewery equipment." [*Id.*]. Defendant does not sell products directly through its website, but instead, prospective customers must contact Defendant directly to obtain a price quote. [*Id.* at ¶ 25]. Defendant claims to have done business with or partnered with several national and international companies, and its clients include companies "which ha[ve] a substantial presence in the State of Colorado." [*Id.* at ¶¶ 7-10].

Plaintiff became aware of Defendant's existence in early 2020. [*Id.* at ¶ 22]. Plaintiff's counsel sent Defendant a letter dated May 21, 2020 concerning the similarities between Plaintiff's registered mark and Defendant's trade name, 5 Star Chemicals,[4] the likelihood of confusion or dilution of the mark, and Plaintiff's potential exposure to legal liability, damage to its reputation, and diminishment of Plaintiff's goodwill if a customer were to be harmed by one of Defendant's products. [*Id.* at ¶ 26]. Defendant did not respond. [*Id.* at ¶ 27]. Plaintiff's counsel then made several telephone calls to Defendant's business number; the calls went unanswered and unreturned. [*Id.* at ¶ 28].

On July 31, 2020, Plaintiff's counsel sent a follow-up letter, to which Defendant responded. [*Id.* at ¶¶ 29-30]. Defendant responded that it provides detergent products "to the Beverage manufacturing industry, with clientele such as Coca-Cola, Pepsico, Anheuser Busch amongst a

---

[4] It is not clear from the Complaint whether Defendant registered a tradename with the Georgia Secretary of State.

host of other smaller breweries [Defendant does] business with," which Defendant characterized as "an integral part of [Defendant's] existing business."  [*Id.* at ¶ 31].  Plaintiff states that, through this letter, "Plaintiff learned . . . that Defendant's sales to the beverage industry are not limited to the Eco Green Lime & Concrete Remover and that such sales represent a substantial portion of Defendant's business."  [*Id.* at ¶ 31].  In addition, Defendant indicated that "[t]he similarity in names [between Plaintiff's and Defendant's businesses] has . . . caused [Defendant] issues with [Defendant's] current clientele."  [*Id.* at ¶ 32].

Plaintiff sent Defendant a cease-and-desist letter on August 20, 2020, demanding that Defendant cease all marketing and sales of its product "to any customer in the beverage manufacturing space" using the 5 Star name, logo, or any other name or logo that is confusingly similar to Plaintiff's FIVE STAR mark.  [*Id.* at ¶ 34].  Defendant did not respond to this letter. [*Id.*].

Plaintiff filed this lawsuit on September 14, 2020, asserting claims of trademark infringement under 15 U.S.C. § 1114; false designation of origin under 15 U.S.C. § 1125(a); trademark dilution under 15 U.S.C. § 1125(c); and cyberpiracy under 15 U.S.C. § 1125(d).  *See* [*id.* at 11-18].  Defendant was properly served on October 15, 2020.  [#9].  After Defendant failed to appear in this case or otherwise defend against this lawsuit, Plaintiff moved for a clerk's entry of default, [#13], and the Clerk of Court entered default on December 4, 2020.  [#14].  On February 8, 2021, Plaintiff filed the present Motion for Default Judgment.  [#16].  In the Motion, Plaintiff seeks (1) a court order permanently enjoining Defendant from "all use of the '5 Star' mark or any other confusingly similar mark"; (2) transfer of Defendant's www.5starchemicals.com domain

name to Plaintiff; (3) $100,000 in statutory damages; (4) costs; and (5) attorney's fees.  [*Id.* at 21].[5]

The presiding judge, the Honorable Raymond P. Moore, referred the Motion to the undersigned

for Recommendation.  [#17].

On May 5, 2021, this court set an evidentiary hearing for June 8, 2021 and ordered Plaintiff

to submit witness and exhibit lists on or before June 1, 2021.  [#18].  In addition, the court noted

that the Motion for Default Judgment did not comply with Local Rule 54.3, which requires that all

motions for attorney's fees "be supported by an affidavit" and include, for each attorney for whom

fees are requested, "a summary of relevant qualifications and experience" and "a detailed

description of the services rendered, the amount of time spent, the hourly rate charged, and the

total amount claimed."  [*Id.* at 2].  Plaintiff submitted its List of Exhibits and Witnesses for

Evidentiary Hearing [#21], its Exhibits [#22], and an Affidavit of Brian D. Kaider in Support of

Motion for Default Judgment [#20] on June 1, 2021.

On June 8, 2021, this court convened for the scheduled evidentiary hearing.  *See* [#18;

#23].  Although Plaintiff designated its Vice President and General Manager, Don Eggebraten, as

its sole witness for the hearing, *see* [#21 at 3], Mr. Eggebraten did not appear for the hearing.  *See*

[#23].  The court, noting that the Motion for Default Judgment and Exhibits did not contain any

affidavits that would authenticate the Exhibits, informed Plaintiff's counsel that the evidentiary

hearing could be re-set or that Plaintiff could supplement the record with a document that

authenticates the Exhibits so that the Exhibits could be considered by the court.  [#23].  Plaintiff

indicated that it would provide supplemental information to the court on or before June 15, 2021,

[*id.*], and on June 14, 2021, Plaintiff filed three affidavits: one from Plaintiff's counsel, [#24], one

---

[5] When citing the Motion for Default Judgment, the court uses the page numbers generated
electronically by the ECF system, rather than Plaintiff's pagination.

from an investigator, [#25], and one from Mr. Eggebraten.  [#26].  Because the Motion is ripe for Recommendation, I consider the appropriateness of an entry of default judgment below.

## LEGAL STANDARD

Rule 55(a) of the Federal Rules of Civil Procedure provides for the entry of default against any party who "has failed to plead or otherwise defend" against an affirmative request for relief. Fed. R. Civ. P. 55(a).  To secure a default judgment against such a party under Rule 55(b), the movant must show that the defaulting party is not a minor or incompetent, is not in the military, has not made an appearance, and that the movant is entitled to a sum certain that can be made certain by computation.  D.C.COLO.LCivR 55.1(a).  Even still, "the entry of a default judgment is committed to the sound discretion of the district court."  *Tripodi v. Welch*, 810 F.3d 761, 764 (10th Cir. 2016).

The first step in determining whether to enter default judgment requires the court to resolve whether it has jurisdiction, and if it does, whether the well-pleaded factual allegations in the Complaint and any attendant affidavits or exhibits support judgment on the claims against the defendants.  *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010); *see also Magic Carpet Ski Lifts, Inc. v. S&A Co., Ltd*, No. 14-cv-02133-REB-KLM, 2015 WL 4237950, at *5 (D. Colo. 2015) ("There must be a sufficient basis in the pleadings for the judgment entered."  (internal quotation marks omitted)).  If the court lacks jurisdiction, either subject matter over the action or personal over the defendant, default judgment cannot enter.  *See Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1166 (10th Cir. 2011) ("A default judgment in a civil case is void if there is no personal jurisdiction over the defendant."); *Dennis Garberg & Assocs., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 772 (10th Cir. 1997) ("[W]hen entry of a default judgment is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its

jurisdiction both over the subject matter and the parties." (emphasis and internal quotation marks omitted)).

By its default, the defendant admits the plaintiff's well-pleaded allegations of fact, is precluded from challenging those facts by the judgment, and is barred from contesting on appeal the facts established. *CrossFit, Inc. v. Jenkins*, 69 F. Supp. 3d 1088, 1093 (D. Colo. 2014); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). The facts alleged in the Complaint which are deemed admitted upon default may form the basis for the court's entry of a default judgment. *See, e.g.*, *Salba Corp. v. X Factor Holdings, LLC*, No. 12-cv-01306-REB-KLM, 2015 WL 5676690, at *1 (D. Colo. 2015). A court may also consider undisputed facts set forth in affidavits and exhibits. *Big O Tires, LLC v. C&S Tires, Inc.*, No. 16-cv-00725-MSK-NYW, 2017 WL 2263079, at *3 (D. Colo. May 24, 2017).

But a party in default does not admit conclusions of law, only allegations of fact, and so those allegations must be enough to establish substantive liability. *Bixler*, 596 F.3d at 762; *Big O Tires*, 2017 WL 2263079, at *3 (quoting 10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure § 2688, at 63 (3d ed. 1998)). In addition, the entry of default does not establish the amount of damages that is reasonable. Damages may be awarded only if the record adequately reflects the basis for the award as supported by the evidence in the record. *Klapprott v. United States*, 335 U.S. 601, 612 (1949); *Mathiason v. Aquinas Home Health Care, Inc.*, 187 F. Supp. 3d 1269, 1274 (D. Kan. 2016).

### PROPOSED FINDINGS OF FACT

Accepting Plaintiff's well-pleaded factual allegations as true and considering the evidence offered, the court respectfully recommends accepting the following proposed findings of fact.

1.      Plaintiff is a Colorado corporation with its principal place of business in Colorado. [#1 at ¶ 1].

2.      Defendant is a Georgia corporation with its principal place of business in Georgia. [*Id.* at ¶ 2].

3.      Defendant does business under the name "5 Star Chemicals."  [*Id.*].

4.      Defendant operates a website at www.5starchemicals.com.  [*Id.* at ¶ 11].

5.      Defendant sells detergent products to the beverage-manufacturing industry, including a product titled Eco Green Lime & Concrete Remover, which removes milkstone and beerstone deposits that accumulate on imperfectly cleansed dairy and brewery equipment.  [*Id.* at ¶¶ 24, 31].

6.      Defendant claims to have done business with numerous national companies with a presence in the State of Colorado and claims to have partnered with several large companies with a national or international presence.  [*Id.* at ¶ 8].

7.      Plaintiff is a manufacturer of cleaning and sanitizing chemicals for use in the food and beverage industry, with a particular focus on breweries.  [*Id.* at ¶ 13].

8.      Plaintiff has used the FIVE STAR mark to manufacture and sell its products since 1980.  [*Id.* at ¶ 17].

9.      Plaintiff has operated a website at www.fivestarchemicals.com since at least 2001. [*Id.* at ¶ 76].

10.      Plaintiff secured a trademark for the FIVE STAR mark on November 10, 2009.  [*Id.* at ¶ 14].

11.      Plaintiff's FIVE STAR mark was inadvertently abandoned on June 17, 2016.  [*Id.*].

12.     Plaintiff filed a new application for the FIVE STAR mark on March 17, 2017.  The mark was registered on July 3, 2018 in class 001 for "[c]hemicals for use in the manufacture of beer, wine, cider, liquor, spirits, mead, and other alcoholic and non-alcoholic beverages" and class 005 for "[s]anitizing preparations for food and beverage industry and homebrewing use."  [*Id.* at ¶ 16].

13.     Plaintiff has expended tremendous time, energy, and money in the marketing and advertising of its products under the FIVE STAR mark.  [*Id.* at ¶ 18].

14.     Plaintiff sent Defendant a letter informing Defendant of its registered FIVE STAR mark on May 21, 2020.  [*Id.* at ¶ 26].

15.     Defendant acknowledged that the similarity in names between Plaintiff's and Defendant's businesses had "caused [Defendant] issues with [Defendant's] current clientele."  [*Id.* at ¶ 32].

16.     Defendant continued to use the 5 Star Chemicals name after receiving notice of Plaintiff's registered mark.  [*Id.* at ¶ 40].

17.     Plaintiff initiated this civil action by filing its Complaint in this District on September 14, 2020.  *See generally* [*id.*].

18.     Pursuant to executed summonses, Defendant was to answer or otherwise respond to the Complaint on or before November 5, 2020.  [#9].

19.     Defendant failed to answer or otherwise respond to the Complaint.  *See generally* [#10; #13; #14].

20.     On February 8, 2021, Plaintiff filed its Motion for Default Judgment.  [#16].

**PROPOSED CONCLUSIONS OF LAW AND RECOMMENDATION**

**I.    Subject Matter Jurisdiction**

Plaintiff seeks relief in this matter under the Lanham Act, 15 U.S.C. § 1051 *et seq.* (the "Act").  *See generally* [#1].  Pursuant to 15 U.S.C. § 1121(a), United States district courts have original jurisdiction of all cases arising under the Act.  Thus, Plaintiff invokes the court's subject matter jurisdiction pursuant to 28 U.S.C. § 1331.  [*Id.* at ¶ 5].  The court respectfully recommends that a finding of subject matter jurisdiction is appropriate.

**II.    Personal Jurisdiction**

Having concluded that the court has subject matter over this action, this court now considers whether the court may exercise personal jurisdiction over Defendant.  For the following reasons, I respectfully recommend finding that this court lacks such personal jurisdiction.[6]

"The requirement that a court have personal jurisdiction flows from the Due Process Clause.  It represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty."  *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1210 (10th Cir. 2000) (brackets, ellipses, and internal quotation marks omitted).  In a federal question case "in which the federal statute at issue does not authorize nationwide service of process, personal jurisdiction is determined according to the law of the forum state."  *Impact Prods., Inc. v. Impact Prods.*, LLC, 341 F.Supp.2d 1186, 1189 (D. Colo. 2004).  "Colorado's long-arm statute, Colo. Rev. Stat. § 13-1-124, extends jurisdiction to the [United States] Constitution's full extent.  The

---

[6] "[A] court may dismiss an action on its own motion for lack of personal jurisdiction in the context of a motion for default judgment."  *Ryuunosuke Takeshige v. Rich Broad. LLC*, No. 20-cv-01262-WJM-KLM, 2021 WL 2351036, at *2 (D. Colo. June 9, 2021); *see also Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1202 (10th Cir. 1986) (finding that a district court may *sua sponte* dismiss a case for lack of personal jurisdiction in the default-judgment context).

personal jurisdiction analysis here is thus a single due process inquiry." *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017) (internal case citations omitted).

"To exercise jurisdiction in harmony with due process, defendant[] must have minimum contacts with the forum state, such that having to defend a lawsuit there would not offend traditional notions of fair play and substantial justice." *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011) (brackets and internal quotation marks omitted). The minimum contacts may give way to specific or general jurisdiction. *See Intercon, Inc. v. Bell Atl. Internet Sols., Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000). General jurisdiction exists when the defendant's contacts with the forum are "so continuous and systematic as to render [it] essentially at home in the forum State." *Fireman's Fund Ins. Co. v. Thyssen Min. Const. of Canada, Ltd.*, 703 F.3d 488, 493 (10th Cir. 2012). Specific jurisdiction exists when a defendant purposefully directs her activities to residents of the forum and the cause of action arises out of those activities. *See Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1066 (10th Cir. 2007).

Plaintiff asserts that this court has personal jurisdiction over Defendant because Defendant "claims . . . to have done business with numerous national companies with a presence in the State of Colorado," and "claims to have partnered with several large companies with a national or international presence." [#16 at 7]. In addition, Plaintiff notes that Defendant's clients include companies which have "a substantial presence in the State of Colorado." [*Id.*]. Finally, Plaintiff asserts that Defendant's website is available "throughout the United States, including Colorado," and that potential customers must contact Defendant for a quote to purchase products. [*Id.*]. All in all, Plaintiff asserts that "[t]he advertising of [Defendant's] products in the State of Colorado as well as sales to clients with a substantial presence in the State of Colorado satisfy the minimum contacts test sufficient to support the assertion of personal jurisdiction under the Colorado long-

arm statute and federal due process requirements." [*Id.* at 7-8]. Because Plaintiff does not specify whether the court has general or specific personal jurisdiction over Defendant, *see* [#1 at ¶ 11; #16 at 7-8]; the court analyzes personal jurisdiction in both contexts.

*Specific Jurisdiction*. Specific jurisdiction exists if the lawsuit "aris[es] out of or relat[es] to the defendant's contacts with the forum." *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017). The specific jurisdiction analysis is two-fold. First, the court must determine whether the defendant has sufficient minimum contacts with the forum state such that the defendant could "reasonably anticipate being haled into court there." *Monge v. RG Petro-Mach. (Grp.) Co. Ltd.*, 701 F.3d 598, 613 (10th Cir. 2012). This requires a showing of more than "random, fortuitous, or attenuated contacts"; instead, the plaintiff must demonstrate that the defendant "purposefully direct[ed]" its activities at residents of the forum and that the litigation "result[s] from alleged injuries that arise out of or relate to those activities." *Id.* (quotation omitted). If such minimum contacts exist, the court must then determine whether its exercise of personal jurisdiction over the defendant would offend "traditional notions of fair play and substantial justice." *Asahi Metal Indus. Co. v. Superior Ct. of Cal., Solano Cty.*, 480 U.S. 102, 105 (1987). In so doing, the court evaluates whether the exercise of personal jurisdiction "is reasonable in light of the circumstances surrounding the case." *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1061 (10th Cir. 2008).

With respect to minimum contacts, Plaintiff primarily asserts that Defendant has sufficient minimum contacts with Colorado because Defendant claims to have business contacts or clients that have a "substantial presence" in the State of Colorado. [#16 at 7]. Setting aside the fact that these allegations do not demonstrate that these third parties *themselves* have minimum contacts with Colorado, but instead simply state that these parties have a "presence" in Colorado, the United

12

States Supreme Court has advised that, while "a defendant's contacts with the forum State may be intertwined with his transactions or interactions with . . . other parties," a defendant's relationship with "a third party, standing alone, is an insufficient basis for jurisdiction." *Walden v. Fiore*, 571 U.S. 277, 286 (2014). Indeed, the defendant's relationship with the forum state "must arise out of contacts that the 'defendant [itself]' creates with the forum State," *id.* at 284 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)), and the court's inquiry must focus on the defendant's contacts with the forum state, "not the defendant's contacts with persons who reside there." *Id.* at 285. Neither the Complaint nor the Motion for Default Judgment contains any allegations concerning Defendant's contacts with the forum state itself or otherwise demonstrating that, through its business relationships, Defendant has purposefully directed its activities at Colorado, as required to demonstrate personal jurisdiction. *See* [#1; #16]; *see also Walden*, 571 U.S. at 286 (stating that a defendant may only be haled into court based on its own affiliation with the forum, and not based on the "random, fortuitous, or attenuated" contacts it makes "by interacting with other persons affiliated with the State").

Indeed, the basis for Plaintiff's personal-jurisdiction argument appears to be that, because Defendant has business relationships with "national" or "international" companies, who, by virtue of their wide reach, happen to have a "presence" in Colorado, Defendant too must have a presence in Colorado sufficient to establish minimum contacts and thus personal jurisdiction. *See* [#16 at 7-8]. But by this reasoning, Defendant would seemingly be subject to the personal jurisdiction of every state in which these wide-reaching companies, such as Nestle, Coca-Cola, and PepsiCo, have a presence—or, in other words, every state in the country. Such a nationwide jurisdictional reach would "resemble[] a loose and spurious form of general jurisdiction," *Bristol-Myers Squibb*, 137

S. Ct. at 1781, and "eviscerate the personal jurisdiction requirement as it currently exists." *Millennium Enter., Inc. v. Millennium Music, LP*, 33 F. Supp. 2d 907, 910 (D. Or. 1999).

Similarly, Defendant's maintenance of a website accessible by Colorado residents does not render Defendant subject to this state's personal jurisdiction, as neither the Complaint nor the Motion contain any allegations that Defendant personally targets Colorado residents via its website. The United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") has indicated that, "when a defendant's alleged contacts with the forum arise from Internet-based conduct, 'it is necessary to adapt the analysis of personal jurisdiction . . . by placing emphasis on the internet user or site *intentionally directing* [its] activity or operation at the forum state rather than just having the activity or operation accessible there.'" *Velasco Briseno v. Mktg. & Mgmt. Sols., LLC*, No. 18-02482-CM-JPO, 2019 WL 2646661, at *4 (D. Kan. June 27, 2019) (quoting *Shrader*, 633 F.3d at 1239 (emphasis in original)). Mere accessibility of Defendant's website in Colorado is insufficient to demonstrate that Defendant specifically and purposefully directed its internet activities at Colorado. *See Baldwin v. Athens Gate Belize, LLC*, No. 18-cv-00586-PAB-NYW, 2019 WL 4674332, at *4 (D. Colo. Sept. 24, 2019) (finding that complaint failed to demonstrate personal jurisdiction based on the defendants' maintenance of a website where the complaint "[did] not allege that the . . . website contained Colorado-specific information or that [the website's] advertisements were directed to Colorado residents in particular such that the forum state was intentionally targeted by defendants"); *see also Boppy Co. v. Luvee Prods. Corp.*, No. 04-MK-320, 2004 WL 2608265, at *4 (D. Colo. May 25, 2004) ("[T]he Court notes that many cases recognize that the 'purposeful' element is not satisfied by an interactive website that is generally available to persons nationwide (much less worldwide) but which does not specifically target

residents of the forum state to a degree greater than any other users.").  The court declines to find personal jurisdiction here based on Defendant's maintenance of a nationally accessible website.[7]

Even if these contacts were sufficient to establish Defendant's presence in the state, the court cannot conclude that the allegations contained in the Complaint arise out of Defendant's alleged contacts with the forum state—the second required prong in the specific-jurisdiction analysis.  In the Complaint, Plaintiff alleges that Defendant has infringed upon its registered trademark and, in so doing, has engaged in false designation of origin, trademark dilution, and cyberpiracy.  *See* [#1].  However, there are no allegations that any of the products manufactured or sold under the allegedly infringing name were manufactured or sold in Colorado, that any of the alleged actual confusion between Plaintiff's mark and Defendant's use of a similar mark occurred in Colorado, or that Defendant's creation of a website allegedly giving rise to a cyberpiracy claim occurred in Colorado.  *See generally* [*id.*]; *see also Kindig It Design, Inc. v. Creative Controls, Inc.*, 157 F. Supp. 3d 1167, 1176 (D. Utah 2016) (in patent infringement case, finding no specific jurisdiction where there was "no evidence that [the defendant] made or sold any allegedly infringing products in Utah").

Because the court finds that Defendant does not have sufficient minimum contacts to establish specific personal jurisdiction, and because the allegations in the Complaint do not arise out of contact with the forum state, the court need not consider whether the exercise of such jurisdiction would offend traditional notions of fair play and substantial justice.  *Am. Web, Inc. v.*

---

[7] Plaintiff's statement that Defendant's website "does not allow for ordering directly from the website" but instead requires customers to "contact the company for a quote," *see* [#1 at ¶ 1; #16 at 7], does not change this court's analysis, as there are no allegations that this feature created some sort of substantial connection between Defendant and the forum state, such as factual allegations that Defendant was contacted by someone in Colorado to make a purchase.  *Walden*, 571 U.S. at 284 ("[T]he defendant's suit-related conduct must create a substantial connection with the forum State.").

*Flom Corp.*, No. 11-cv-02444-WYD-KMT, 2013 WL 1222059, at *4 (D. Colo. Mar. 25, 2013).

Accordingly, the court concludes that it does not have specific jurisdiction over Defendant in this

case and will turn to whether Plaintiff can establish that Defendant is subject to Colorado's general

jurisdiction.

 ***General Jurisdiction***.  "General personal jurisdiction means that a court may exercise

jurisdiction over an out-of-state party for all purposes."  *Old Republic*, 877 F.3d at 903.  As set

forth above, to establish general jurisdiction, the out-of-state party's contacts with the forum state

must be so "continuous and systematic" so as to render them "essentially at home" in the forum

state.  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  To determine

whether an out-of-state defendant may be deemed "at home" in the forum state, the Tenth Circuit

considers the following factors:

> (1) whether the corporation solicits business in the state through a local office or
> agents; (2) whether the corporation sends agents into the state on a regular basis to
> solicit business; (3) the extent to which the corporation holds itself out as doing
> business in the forum state, through advertisements, listings or bank accounts; and
> (4) the volume of business conducted in the state by the corporation.

*Kuenzle v. HTM Sport-Und Freizeitgeräte AG*, 102 F.3d 453, 457 (10th Cir. 1996).  The Tenth

Circuit has stated that "engaging in commerce with residents of the forum state is not in and of

itself the kind of activity that approximates physical presence within the state's borders."  *Shrader*,

633 F.3d at 1243.

 The Complaint and the Motion contain no information concerning whether Defendant

maintains an office in Colorado, employs the use of agents within the state of Colorado, or whether

Defendant holds bank accounts in Colorado.  *See* [#16 at 7-8].  This cuts against a finding of

personal jurisdiction, as it is Plaintiff's burden to demonstrate that such jurisdiction exists.  *Rambo*

*v. Am. S. Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988).  And although the Motion states that

Defendant has business relationships with entities that have a "presence" in Colorado, there is no information before the court detailing the "volume of business conducted in the state" by Defendant—if any, *Kuenzle*, 102 F.3d at 457; *see also* [#1; #16]—and the mere fact that Defendant has business contacts within the forum state is insufficient to demonstrate that Defendant is "at home" in Colorado. *See Videx, Inc. v. Micro Enhanced Tech., Inc.*, No. 6:12-cv-0065-AA, 2012 WL 1597380, at *2 (D. Or. May 4, 2012) ("[D]efendants' supplier-buyer relationship with several national companies who conduct business in Oregon is far too remote to establish the kind of continuous and systematic contacts required to establish general jurisdiction."); *Three Rivers Provider Network, Inc. v. Med. Cost Containment Pros., LLC*, No. 2-18-cv-135-JCM (GWF), 2018 WL 3620491, at *4 (D. Nev. July 30, 2018) ("The fact that Medical Cost contracts business with national companies such as AAA or McDonald's has no bearing on whether Medical Cost has continuous and systematic contacts with Nevada.").

Moreover, while Plaintiff asserts that Defendant's "website is available throughout the United States, including Colorado" and that Defendant advertises its products "in the State of Colorado," *see* [#16 at 7-8], this is insufficient to find general personal jurisdiction here. "By its very nature, the internet allows individuals and business to create a presence that is visible throughout the United States and the world." *Baldwin*, 2019 WL 4674332, at *6 (quoting *Kindig It Design*, 157 F. Supp. 3d at 1176). "When general jurisdiction is based on internet activity, the Tenth Circuit has favored a requirement that 'the defendant [must have] actually and deliberately used its website to conduct commercial transactions *on a sustained basis with a substantial number of residents* of the forum.'" *Velasco Briseno*, 2019 WL 2646661, at *4 (quoting *Shrader*, 633 F.3d at 1243 (alteration marks and emphasis in original)); *cf. Henriquez v. El Pais Q'Hubocali.com*, 500 F. App'x 824, 829 (11th Cir. 2012) (unpublished) ("The fact that a particular website displays

an advertisement that is viewable in Georgia or shows a company that does business in Georgia does not, by itself, mean that the website owner had any contact with Georgia.").

This court acknowledges that the lack of appearance by and discovery from Defendant may make it difficult to ascertain facts relevant to personal jurisdiction. But even assuming the facts alleged are true, the court thus cannot conclude that general jurisdiction exists here or that this court's exercise of personal jurisdiction over Defendant would be proper. For these reasons, I respectfully **RECOMMEND** that Plaintiff's Motion be **DENIED** without prejudice and that this case be **DISMISSED** without prejudice for lack of personal jurisdiction.[8] However, because this court proceeds by Recommendation, the court will analyze the remaining merits of the Motion for purposes of completeness.

## III. Service

Rule 4 of the Federal Rules of Civil Procedure requires that a plaintiff serve defendants with a summons and a copy of the complaint within 90 days of initiating a civil action. Fed. R. Civ. P. 4(c)(1)-(3), 4(m). Failure to timely serve under Rule 4(m) may result in dismissal of the civil action without prejudice, unless the plaintiff demonstrates good cause for an extension of time to serve the defendants. *See Vuolo v. Garfield Cty. Sheriffs*, No. 09-cv-01476-ZLW-KMT, 2010 WL 326320, at *1-2 (D. Colo. Jan. 20, 2010). Moreover, default judgment may not enter where the plaintiff has failed to serve or has inadequately served the defaulting party. *See Jes Solar Co. Ltd. v. Tong Soo Chung*, 725 F. App'x 467, 471 (9th Cir. 2018) (unpublished) ("Because

---

[8] In addition, because Plaintiff has not demonstrated that Defendant resides in this judicial district, that a "substantial part of the events or omissions giving rise to the claim" occurred in this judicial district, and because Defendant is not subject to Colorado's personal jurisdiction, the court finds that venue is not proper in this District. *See* 28 U.S.C. § 1391(b).

the service on Chung and Kim was inadequate, the entries of default and default judgments must be set aside.").

As recounted, Plaintiff initiated this civil action by filing its Complaint in this District on September 14, 2020. *See* [#1]. Defendant was served on October 15, 2020, *see* [#9], and Defendant was to answer or otherwise respond to the Complaint on or before November 5, 2020. [*Id.*]. Defendant failed to do so. Notwithstanding the court's determination that this court lacks personal jurisdiction over Defendant, the court concludes that service was properly effectuated pursuant to Rule 4(m).

## IV.    Substantive Liability

Plaintiff's Amended Complaint asserts four claims: (1) trademark infringement under 15 U.S.C. § 1114; (2) false designation of origin under 15 U.S.C. § 1125(a); (3) trademark dilution under 15 U.S.C. § 1125(c); and (4) cyberpiracy under 15 U.S.C. § 1125(d). *See* [#1 at 11-18]. Plaintiff argues that default judgment is proper on all claims. *See* [#16]. I consider each claim in turn.

### A.    Trademark Infringement

To establish a claim of trademark infringement, the plaintiff must demonstrate: (1) a protectable interest in a mark; (2) the use of identical or similar marks in commerce; and (3) the likelihood of confusion arising from the use of an identical or similar mark. *Derma Pen, LLC v. 4EverYoung Ltd.*, 773 F.3d 1117, 1120 (10th Cir. 2014). If trademark infringement is established, a plaintiff may recover defendant's profits,[9] damages sustained by the plaintiff, and costs of the action as damages. 15 U.S.C. § 1117(a).

---

[9] In the Motion, Plaintiff does not seek disgorgement of Defendant's profits. *See* [#16].

In this case, Plaintiff has established a protectable interest in the FIVE STAR mark by submitting proof of federal registration of the mark. *See* [#1-9]; *see also* 15 U.S.C. § 1115; *Drexel Enterprises, Inc. v. Richardson*, 312 F.2d 525, 527 (10th Cir. 1962) (observing that registration of a trademark is *prima facie* evidence of the validity of the mark and of the registrant's exclusive right to use it as specified in the certificate). In addition, the court finds that Plaintiff has established Defendant's use of identical or similar marks to the FIVE STAR mark in commerce. According to the allegations contained in the Complaint, which are taken as true for purposes of the instant Motion, Defendant has used the "5 Star" name to promote its products and to direct the sales of its products. *See* [#1 at ¶ 11, 23, 31-32]. Accordingly, I find that the first two elements of trademark infringement have been established here.

Next, in evaluating the likelihood of confusion between the marks, courts consider: (1) "evidence of actual confusion;" (2) "the strength of the contesting mark"; (3) "the degree of similarity between the competing marks;" (4) "the intent of the alleged infringer in adopting the contested mark"; (5) "the degree of care that consumers are likely to exercise in purchasing the parties' products"; and (6) "the similarity of the parties' products and the manner in which they market them." *Water Pik, Inc. v. Med-Systems, Inc.*, 726 F.3d 1136, 1143 (10th Cir. 2013). The court considers each of these factors in turn.

***Evidence of Actual Confusion***. According to Plaintiff, there is evidence of actual confusion between the marks because Defendant admitted that "the similarity in names has . . . caused [Defendant] issues with [Defendant's] current clientele." [#1 at ¶ 32; #16 at 14; #22 at 42]. However, even though Defendant has admitted to "issues" with its clientele, Plaintiff has submitted no evidence of actual confusion in the marketplace that would permit the court to gauge the level or nature of the alleged confusion, which is relevant to this court's analysis. *See Atlas Biologicals,*

*Inc. v. Kutrubes*, No. 15-cv-00355-CMA-KMT, 2019 WL 4594274, at *8 (D. Colo. Sept. 23, 2019)

(quoting *Universal Money Ctrs., Inc. v. Am. Tel. & Tel. Co.*, 22 F.3d 1527, 1535 (10th Cir. 1994)

("De minimis 'evidence of some actual confusion does not dictate a finding of likelihood of

confusion.'")); *PlayNation Play Sys., Inc. v. Velex Corp.*, 924 F.3d 1159, 1167 (11th Cir. 2019)

("The actual confusion inquiry turns on both the number of instances of confusion and the type of

person confused.").  Nevertheless, this court is mindful that "a plaintiff need not set forth evidence

of actual confusion to prevail in a trademark infringement action."  *Big O Tires, Inc. v. Bigfoot*

*4X4, Inc.*, 167 F. Supp. 2d 1216, 1225 (D. Colo. 2001) (citing *Beer Nuts, Inc. v. Clover Club Foods*

*Co.*, 805 F.2d 920, 928 (10th Cir. 1986)); *cf. Checkpoint Sys., Inc. v. Check Point Software Tech.,*

*Inc.*, 269 F.3d 270, 291 (3d Cir. 2001) (stating that, because "many instances [of confusion] are

unreported," it may be "difficult to find evidence of actual confusion").  The court finds that this

factor is neutral.  *Cf. Atlas Biologicals*, 2019 WL 4594274, at *8 ("Because there is only anecdotal,

de minimis evidence of actual confusion, this factor weighs only slightly in favor of Atlas.").

   ***The Strength of the Mark***.  "A strong trademark is one that is rarely used by parties other

than the owner of the trademark, while a weak trademark is one that is often used by other parties."

*Universal Money Ctrs.*, 22 F.3d at 1533.  "To assess the relative strength of a mark, one must

consider the two aspects of strength: (1) Conceptual Strength: the placement of the mark on the

[distinctiveness or fanciful-suggestive-descriptive spectrum]; and (2) Commercial Strength: the

marketplace recognition value of the mark."  *King of the Mountain Sports, Inc. v. Chrysler Corp.*,

185 F.3d 1084, 1093 (10th Cir. 1999) (quotation omitted; alteration marks in original).

   With respect to conceptual strength, "the spectrum of distinctiveness ranges along the

following five categories of marks (from least to most distinctive):" (1) generic, or a mark that

"identifies only a general class of goods to which a specific product may belong"; (2) descriptive,

or a mark that "reflects one or more of the product's characteristics or qualities"; (3) suggestive, meaning that the mark "suggests or evokes, rather than describes, the nature of the product"; (4) arbitrary, or "a word or symbol already in common use that does not have any apparent relation to the product"; and (5) fanciful, or a mark which is "a novel word or design" that was created for the sole purpose of serving as a trademark. *Water Pik*, 726 F.3d at 1152.  Plaintiff argues that the FIVE STAR mark is at least suggestive, if not arbitrary, and is "conceptually strong in and of itself."  [#16 at 15].

The phrase "five star" denotes a high level of quality assigned to a product or service.  The Tenth Circuit has instructed that some terms which denote the quality of a product are service, such as "best," "superior," or "preferred," are examples of descriptive terms.  *First Sav. Bank, F.S.B. v. First Bank Sys., Inc*., 101 F.3d 645, 655 (10th Cir. 1996).  However, the court finds that the mark FIVE STAR is slightly more suggestive than the above terms, as it suggests, rather than describes, the quality of the product.  *Water Pik*, 726 F.3d at 1152.  But the court cannot conclude that the FIVE STAR mark is arbitrary—or has no relation to the product or services—given that it necessarily implies the quality of Plaintiff's products.  *See Heartsprings, Inc. v. Heartspring, Inc.*, 143 F.3d 550, 555 (10th Cir. 1998) ("To qualify as arbitrary, a mark must have 'a common meaning unrelated to the product for which it has been assigned, such as APPLE when applied to computers.") (quotation omitted).  Ultimately, the court concludes that, conceptually, the FIVE STAR mark is suggestive, and is thus a strong mark.  *See Hornady Mfg. Co. v. Doubletap, Inc*., 746 F.3d 995, 1007 (10th Cir. 2014) (stating that suggestive marks are considered strong); *but see Cent. Bancorp, Inc. v. Cent. Bancompany, Inc.*, 385 F. Supp. 3d 1122, 1143 (D. Colo. 2019) (finding that a suggestive mark was weak).

In addition, Plaintiff asserts that its mark is commercially strong because its FIVE STAR mark "has been in use for more than 40 years and Plaintiff is one of the most well-known manufacturers of chemicals for the beverage industry." [#16 at 16]. The court finds that, these facts, deemed admitted, demonstrate that the FIVE STAR mark is commercially strong. *Cf. Rolls-Royce Motor Cards Ltd. v. Davis*, No. 15-0417 (KM), 2016 WL 3913640, at *5 (D.N.J. Mar. 11, 2016) (in default judgment context, relying on the plaintiffs' allegations that the marks are "well known and unique and are identified by the public solely with Plaintiffs and their products and services" and that the marks "have been used for nearly a century around the world" in finding commercial strength). Having found commercial strength and some level of conceptual strength, the court finds that this factor weighs in favor of finding trademark infringement.

***Degree of Similarity***. Courts "test the degree of similarity between marks on three levels: sight, sound, and meaning." *Water Pik*, 726 at 1155. "This rule is based on a common sense observation of customer behavior: the typical shopper does not retain all of the individual details of a composite mark in his or her mind, but retains only an overall, general impression created by the composite as a whole," *id.* (quotation omitted), and "similarities between marks [are] given more weight than differences." *Universal Money Ctrs.*, 22 F.3d at 1531.

Here, the marks are not visually similar: Plaintiff's logo contains the numerical five within a star, surrounded in a circular shape, with "Five Star Chemicals & Supply, Inc." directly to the right. *See* [#1 at ¶ 15]. Defendant's logo appears to be the numerical five next to a gold star, with the name "FIVE STAR CHEMICALS" written below in small letters. *See* [#1-5]. Beyond their respective appearances, these two marks have a high likelihood of confusion. Defendant's

business name, "5 Star Chemicals,"[10] "subsumes plaintiff's existing text mark," FIVE STAR.[11] *Gentle Giant Moving Co. v. Gentle Giant Moving & Storage Inc.*, No. 17-cv-02762-PAB-NRN, 2019 WL 4200397, at *6 (D. Colo. Sept. 4, 2019).  Moreover, "FIVE STAR" and "5 Star" are identical in sound, which weighs in favor of finding a strong degree of similarity.  *See Cent. Bancorp*, 385 F. Supp. 3d at 1140 (finding that the marks "Central Bank & Trust" and "Central Bank" were "identical [in sound] until one reaches the 'and Trust' portion of Plaintiff's mark—and it is doubtful how often a normal consumer adds the 'and Trust' when referring to Plaintiff.").  Moreover, the court perceives no material difference in meaning between the two marks.  The court finds that this factor weighs in favor of finding a likelihood of confusion.

*Defendant's Intent*.  Plaintiff asserts that "[t]here are two undisputed facts . . . from which the Court can infer Defendant's [wrongful] intent."  [#16 at 14].  First, Plaintiff highlights the fact that "Defendant's company name is 5 Star Enterprise, but it opted to do business under the name 5 Star Chemicals, more than 25 years after Plaintiff entered the market under the name Five Star Chemicals"; second, Plaintiff notes that Defendant has admitted to actual confusion in the marketplace and has made no effort to mitigate this known confusion.  [*Id.*].  However, Plaintiff has provided no authority demonstrating that the court can infer intent from these facts.  *See generally* [*id.*].  Although the "deliberate adoption of a similar mark may lead to an inference of intent to pass off goods as those of another," *Beer Nuts*, 805 F.2d at 927, there is currently no

---

[10] Plaintiff's trademark infringement allegations are based on Defendant's use of the "5 Star Chemicals" mark, not a "5 Star" mark.  *See* [#1 at ¶ 47].

[11] Plaintiff states that "[i]n the context of trademark protection, the word 'chemicals' is disclaimed matter[] because it merely describes a feature of the mark owner's goods."  *See* [#16 at 13]. Plaintiff does not cite authority for this proposition, with which this court respectfully disagrees. In the Tenth Circuit, the court considers the entirety of the mark in determining the likelihood of confusion, including disclaimed words.  *See Universal Money Ctrs*., 22 F.3d at  1531 (10th Cir. 1994); *see also Water Pik*, 726 F.3d 1136, 1155 (10th Cir. 2013).

allegation in the record demonstrating that Defendant knew of Plaintiff's mark prior to its establishment and deliberately adopted a name similar to that of Plaintiff.  And although Plaintiff alleges that Defendant has taken no efforts to mitigate the confusion between the marks, *see* [#1 at ¶ 33], the Tenth Circuit has directed that "the alleged infringer's intent is measured at the time it 'chose' or 'adopted' its mark" and that, in analyzing intent, courts should "look to evidence of 'the process of choosing' a mark, not evidence of events subsequent to its adoption."  *Hornaday Mfg.*, 746 F.3d at 1004 (quoting *Water Pik*, 726 F.3d at 1157, 1159).  Because there is no such evidence, this factor weighs against a finding of a likelihood of confusion.

>       ***Degree of Care***.  Plaintiff does not make any argument or present any evidence as to consumers' degree of care in purchasing the Parties' products.  *See* [#16].  Accordingly, this factor weighs against a finding of a likelihood of confusion.  *See Gentle Giant*, 2019 WL 4200397, at *6 ("Because plaintiff bears the burden of showing likelihood of confusion, . . . the Court finds [the factors not addressed by plaintiff] weigh against a finding of likelihood of confusion." (quotation omitted)).

>       ***Similarity of the Products or Marketing***.  "The greater the similarity between the products and services, the greater the likelihood of confusion."  *Universal Money Ctrs.*, 22 F.3d at 1532. Here, Defendant uses the 5 Star Chemicals business name to sell cleaning products to the beverage manufacturing industry, including breweries.  [#1 at ¶ 31].  Similarly, Plaintiff uses its FIVE STAR mark to manufacture and sell cleaning and sanitizing products to the food and beverage industry, "with particular focus on breweries."  [*Id.* at ¶ 13].  Thus, the court finds that there is an overlap between both the Parties' products and their target clientele, which demonstrates a likelihood of confusion.  *See Water Pik*, 726 F.3d at 1160.

25

*Weighing The Factors*.  None of the above factors is considered dispositive.  *Universal Money Ctrs.*, 22 F.3d at 1530.  Weighing the factors, the court finds that they slightly weigh in favor of finding trademark infringement here: Plaintiff has demonstrated similarity between the marks, similarity between the Parties' products or marketing, and the strength of Plaintiff's registered mark.  Having found a likelihood of confusion, the court concludes that Plaintiff has demonstrated that it is entitled to judgment in its favor on its trademark infringement claim.  However, due to its findings with respect to this court's lack of personal jurisdiction over Defendant, this court does not recommend that default judgment be entered against Defendant and in favor of Plaintiff on this claim.

### B.      False Designation of Origin

Next, Plaintiff asserts that Defendant is liable for false designation of origin under 15 U.S.C. § 1125(a).   "Section 43(a) of the Lanham Act, prohibiting the use of false designations of origin, protects against service mark infringement even if the mark has not been federally registered."  *Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1215 (10th Cir. 2004) (quotation marks and citation omitted).  In order to prevail on an action under Section 43(a), a plaintiff must establish (1) the mark is protectable; and (2) "the defendant's use of an identical or similar mark is likely to cause confusion among consumers."  *Id.* (brackets, quotation marks, and citation omitted). "To be protectable, a mark must be capable of distinguishing the products or services it marks from those of others."  *Id.* at 1216 (brackets, quotation marks, and citation omitted).  The test examining the "likelihood of confusion" applicable to trademark infringement applies equally to Plaintiff's claim of false designation of origin in violation of 15 U.S.C. § 1125(a).

Here, Plaintiff's mark is protectable because, as the court has already determined, it is suggestive.  *See Water Pik*, 726 F.3d at 1152 (suggestive marks are considered "inherently

distinctive" and need not acquire a secondary meaning to be protectable); *Lederman Bonding Co. v. Sweetalia*, No. 06-cv-00950-WYD-BNB, 2006 WL 2949290, at *2 (D. Colo. Oct. 16, 2006) ("Marks that are suggestive, arbitrary, and fanciful are entitled to protection."). And above, the court has already determined that a likelihood of confusion exists with respect to Defendant's use of a mark similar to Plaintiff's FIVE STAR mark. Thus, this court finds that Plaintiff has established it is entitled to a judgment in its favor with respect to its false-designation-of-origin claim; however, the court declines to recommend that judgment be entered in Plaintiff's favor due to this court's lack of personal jurisdiction over Defendant.

### C.     Trademark Dilution

To establish trademark dilution, a plaintiff must show that (1) it owns a "famous" mark; (2) the mark was famous before the defendant began its use; and (3) the defendant's use of the mark has or will cause dilution of the plaintiff's mark. *Otter Prod., LLC v. Wang*, No. 18-cv-03198-CMA-SKC, 2019 WL 1403022, at *5 (D. Colo. Mar. 28, 2019). A mark is "famous" if it is "widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). To determine whether a mark is famous, courts consider (1) the "duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties"; (2) the "amount, volume, and geographic extent of sales of goods or services offered under the mark"; (3) the "extent of actual recognition of the mark"; and (4) whether the mark was federally registered on the Principal Register. 15 U.S.C. § 1125(c)(2)(A)(i)-(iv).

Plaintiff indicates that its mark was placed on the Principal Register in 2009 and again in 2018. [#16 at 18; #1 at ¶¶ 14-16]. However, Plaintiff has provided no evidence concerning the publicity of its mark, the volume of sales under the mark, or the extent of actual recognition of the

27

mark.  *See* [#1; #16].  Although Plaintiff states that "[b]ecause Defendant never engaged in this case and no discovery was taken by either side, Plaintiff had no opportunity to present evidence regarding the extent of sales under the mark or the extent of actual recognition under the mark," [#16 at 18], the relevant inquiry is whether Plaintiff's mark is famous, not Defendant's, and the court is not persuaded that Defendant's failure to appear in this case somehow prevented Plaintiff from putting forth evidence of its own sales, advertising, or commercial reach.  And Plaintiff's assertion that it is "one of the most well-known brands for chemical supply in the food and beverage industry," [#16 at 18], does not convince the court that its mark is widely recognized by the general public, as required to establish that a mark is "famous."  15 U.S.C. § 1125(c)(2)(A); *see TrueNorth Cos., L.C. v. TruNorth Warranty Plans of N. Am., LLC*, 292 F. Supp. 3d 864, 872 (N.D. Iowa 2018) ("For dilution purposes, a mark must be famous beyond a niche market."); *see also Componentone, L.L.C. v. Componentart, Inc.*, No. 02:05CV1122, 2007 WL 4302108, at *2 (W.D. Pa. Dec. 6, 2007) (finding that trademark dilution claim failed because the mark was "well known only in its niche market—a specific segment of the computer information technology industry").  Accordingly, the court concludes that Plaintiff has failed to meet its burden of demonstrating that its mark is famous and thus has failed to demonstrate it is entitled to default judgment on its trademark dilution claim.[12]

---

[12] Plaintiff also appears to assert that Defendant is liable for trademark dilution under a "dilution by blurring" theory.  *See* [#16 at 18].  However, a dilution-by-blurring claim nevertheless requires proof that a mark is famous.  *See* 15 U.S.C. § 1125(c)(2)(B) ("'[D]ilution by blurring' is association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark.").  Because Plaintiff has not demonstrated that its mark is famous, the court does not analyze whether Plaintiff can succeed on a dilution-by-blurring claim.

### D.       Cyberpiracy

Finally, Plaintiff asserts a cyberpiracy claim under the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d).  [#1 at 18].  Specifically, Plaintiff alleges that Defendant's www.5starchemicals.com domain name is confusingly similar to its own domain name, www.fivestarchemicals.com, and its FIVE STAR mark, and that Defendant has intentionally and in bad faith profited from Plaintiff's mark by using the www.5starchemicals.com domain name.  [*Id.* at ¶¶ 80-81].

Pursuant to the ACPA, a cybersquatter is potentially liable to the owner of a protected mark if that person:

(i)       has a bad faith intent to profit from the mark . . . ; and

(ii)      registers, traffics in, or uses a domain name that—

(I)       in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;

(II)      in the case of a famous mark . . . , is identical or confusingly similar to or dilutive of that mark; or

(III)     is a trademark, word, or name protected by reason of section 706 of Title 18 or section 220506 of Title 36.

15 U.S.C. § 1125(d)(1)(A).  Accordingly, Plaintiff must demonstrate: (1) its mark is protected as specified in the statute and was so protected at the time of registration of its domain name; (2) Plaintiff's mark is distinctive; (3) Defendant's domain name is identical or confusingly similar to Plaintiff's FIVE STAR mark; and (4) Defendant used or registered its domain name with bad faith intent to profit.  *Cleary Building Corp. v. David A. Dame*, 674 F. Supp. 2d 1257, 1263 (D. Colo. 2009) (citing *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Res.*, 527 F.3d 1045, 1057 (10th Cir. 2008)).

Because it is dispositive, the court considers the last factor first, and analyzes whether Plaintiff has adequately demonstrated that Defendant acted in bad faith in registering its domain name.   "The ACPA enumerates nine nonexclusive factors to assist the court in determining whether the use of a trademark involves a bad faith intent to profit." *Cleary*, 674 F. Supp. 2d at 1264 (citing 15 U.S.C. § 1125(d)(1)(B)(i)).   "These factors are designed to balance the property interests of trademark owners with the legitimate interests of Internet users and others who seek to make lawful uses of others' marks, including for purposes such as comparative advertising, comment, criticism, parody, news reporting, [or] fair us." *Id.* (quoting H.R. Rep. No. 106-412, at 10 (1999) (Conf. Rep.)).   The relevant factors include, but are not limited to, Defendant's intellectual property rights in the domain name; Defendant's prior use of the domain name in connection with the bona fide offering of any goods or services; Defendant's intent to divert customers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark; Defendant's offer to transfer, sell, or otherwise assign the domain name to the mark owner or a third party for a financial gain; and Defendant's registration or acquisition of multiple domain names which are confusingly similar to marks of others.  *See* 15 U.S.C. § 1125(d)(1)(b)(i).

Plaintiff asserts that Defendant acted in bad faith because it began using a confusingly similar domain name after Plaintiff began using its own domain name, and that, "[b]y adopting a domain name virtually identical to Plaintiff's, Defendant's intent to divert consumers from Plaintiff's site to Defendant's can be inferred."  [#16].  The court respectfully disagrees.  Plaintiff has cited no authority demonstrating that intent to divert can be inferred based solely on a similarity in domain names.  *See Shear Contractors, Inc. v. Shear Enter. & Gen. Contracting*, No. 1:09-cv-

30

621 GLS DRH, 2010 WL 4781335, at *5 (N.D.N.Y. Nov. 16, 2010) (finding that similarity of names did not in and of itself create an inference of bad faith).  Moreover, the evidence in the record does not demonstrate intentional diversion away from the domain name.  The Complaint indicates that Defendant formed 5 Star Enterprise, Inc. in 2006 and has been using the www.5starchemicals.com since at least 2009.  [#1 at ¶¶ 19, 78].  And while the allegations in the Complaint indicate that, as of August 10, 2020, Defendant knew of Plaintiff's existence, *see* [*id.* at ¶ 30], there are no allegations contained in the Complaint demonstrating that Defendant knew of Plaintiff or its domain name when it registered www.5starchemicals.com.  *See generally* [*id.*].  The court cannot conclude that Defendant's use of the domain name was intended to divert traffic from Plaintiff's website rather than simply to transact its own business.  Indeed, according to the Complaint, Defendant was engaged in the bona fide offering of its own goods via its website.  *See*, *e.g.*, [*id.* at ¶ 25].  Accordingly, the court declines to infer bad faith based only on the similarity of the domains, and Plaintiff offers no additional factual allegations—through its Complaint, Motion for Default Judgment, or supporting evidence—to permit the court to conclude bad faith.  Because this court finds that Plaintiff has failed to demonstrate that Defendant acted in bad faith, the court concludes that Plaintiff is not entitled to judgment on its cyberpiracy claim.

## V.    Relief

As set forth above, because this court lacks personal jurisdiction over Defendant, this court recommends that the Motion for Default Judgment be denied and that this case be dismissed without prejudice.  Thus, the court will not address the requests for relief within the Motion in this Recommendation, but is prepared to issue a supplemental Recommendation should Judge Moore determine that default judgment is appropriate as to any claims for relief.

## CONCLUSION

For the reasons stated herein, this court respectfully **RECOMMENDS** that:

(1)     Motion for Default Judgment, Permanent Injunction, Statutory Damages, Costs, Attorneys' Fees, and Other Equitable Relief Against Defendants [sic] 5 Star Enterprise, Inc. (the "Motion" or "Motion for Default Judgment") [#16] be **DENIED**; and

(2)     This case be **DISMISSED without prejudice** for lack of personal jurisdiction over Defendant.[13]

DATED:  June 24, 2021                    BY THE COURT:

Nina Y. Wang
United States Magistrate Judge

---

[13] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings of fact, conclusions of law, and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).