# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge Raymond P. Moore

Civil Action No. 1:20-cv-02769-RM-STV

FIVE STAR CHEMICALS & SUPPLY, LLC,

   Plaintiff,

v.

5 STAR ENTERPRISE, INC.,

   Defendant.

---

## ORDER

---

This matter is before the Court on the June 24, 2021, Recommendation of United States Magistrate Judge Nina Y. Wang (ECF No. 27) to deny Plaintiff Five Star Chemicals & Supply, LLC's ("Five Start Chemicals" or "Plaintiff") Motion for Default Judgment, Permanent Injunction, Statutory Damages, Costs, Attorneys' Fees, and Other Equitable Relief Against Defendants 5 Star Enterprise, Inc. (ECF No. 16) and to dismiss the case for lack of personal jurisdiction over Defendant 5 Star Enterprise, Inc. ("5 Star Enterprise" or "Defendant"). Plaintiff filed an objection to the recommendation (ECF No. 29) and Defendant failed to respond. For the reasons below, the Court ADOPTS the recommendation IN PART, DENIES the Motion for Default Judgment, and GRANTS Plaintiff limited time in which to conduct some discovery on the question of jurisdiction.

## I. LEGAL STANDARDS

### A. Review of the Magistrate Judge's Recommendation

Pursuant to Fed. R. Civ. P. 72(b)(3), this Court reviews de novo any part of the

magistrate judge's recommendation to which a proper objection is made.  An objection is proper only if it is sufficiently specific "to focus the district court's attention on the factual and legal issues that are truly in dispute." *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  "In the absence of a timely objection, the district court may review a magistrate's report under any standard it deems appropriate." *Summers v. State of Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991).

### B.  Personal Jurisdiction

A district court is authorized to enter a default judgment against any party who has failed to answer or otherwise respond to a plaintiff's claim for relief.  Fed. R. Civ. P. 55(a). Before a court can enter a default judgment, however, it must first ensure that it has jurisdiction to resolve the dispute, and then whether the well-pleaded facts of the Complaint and any attached affidavits or exhibits support judgment on the claims against the defendant. *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010); *see also Takeshige v. Rich Broadcasting LLC*, No. 20-cv-1262-WJM-KLM, 2021 WL 2351036 at *2 (D. Colo. June 9, 2021) (noting that "the Court has an 'affirmative duty' to examine whether personal jurisdiction exists on default judgment.").  If the court lacks subject matter jurisdiction or personal jurisdiction over the defendant, then it cannot enter a default judgment.  *Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1166 (10th Cir. 2011).

In a number of decisions the Supreme Court has illuminated the parameters of personal jurisdiction as it is limited by the Fourteenth Amendment's Due Process Clause.  *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*, 137 S.Ct. 1773, 1779 (2017) (noting that, because by exercising personal jurisdiction over a party a court subjects a defendant to the State's coercive power, that exercise must be compatible with the Fourteenth

2

Amendment's Due Process Clause).  "Although a nonresident's physical presence within the territorial jurisdiction of the court is not required, the nonresident generally must have 'certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"  *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

To establish personal jurisdiction over an out-of-state defendant, the plaintiff must make a prima facie showing that "jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment."  *C5 Medical Werks, LLC v. CeramTec GMBH*, 937 F.3d 1319, 1322 (10th Cir. 2019).  "Because Colorado's long-arm statute confers maximum jurisdiction permitted by constitutional due process, *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005), our only question is whether the [Court's] exercise of personal jurisdiction comports with due process."  *C5 Medical Werks*, 937 F.3d at 1322 (citing *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008)).

The Supreme Court has concluded that "due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it" in order to satisfy the notions of fair play and justice.  *Int'l Shoe Co.*, 326 U.S. at 316.  The nature of those "minimum contacts" required to render jurisdiction appropriate have been illuminated by the Supreme Court over time and fall into two categories.  *See e.g.*, *Bristol-Myers Squibb Co.*, 137 S.Ct. at 780 (defining general and specific jurisdiction); *Walden*, 571 U.S. at 284 (noting that the question of minimum contacts focuses on the relationship between the defendant, the forum, and the litigation); *Goodyear Dunlop Tires Operations S.A. v. Brown*, 564 U.S. 915, 923-24 (2011)

3

(describing general jurisdiction and specific jurisdiction).

Referred to as "general jurisdiction," the first category of personal jurisdiction exists over a corporation in a place "in which the corporation is fairly regarded as home." *Goodyear Dunlop Tires Operations S.A.*, 564 U.S. at 24. General jurisdiction exists, therefore, if "the continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Int'l Shoe Co.*, 326 U.S. at 318. "A court with general jurisdiction may hear *any* claim against the defendant, even if all incidents underlying the claim occurred in a different State." *Bristol-Myers Squibb Co.*, 137 S.Ct. at 1780 (emphasis original).

The second category of personal jurisdiction is called "specific jurisdiction" and it permits a court to exercise jurisdiction only over suits that, themselves, arose out of or relate to the defendant's contacts with the forum. *Id.* Specific jurisdiction "depends on an 'affiliation[n] between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at 919 (quoting *International Shoe*, 326 U.S. at 317, alterations original). Furthermore, "the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum state." *Walden*, 571 U.S. at 284 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985), emphasis original).

There is a two-step inquiry for specific jurisdiction: "(a) whether the plaintiff has shown that the defendant has minimum contacts with the forum state; and, if so, (b) whether the defendant has presented a 'compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *C5 Medical Werks*, 937 F.3d at1323 (quoting *Old Republic Ins. Co. v. Continental Motors, Inc.*, 877 F.3d 895, 904 (10th Cir. 2017)). The minimum

contacts test as it relates to specific personal jurisdiction has two requirements: "(i) that the defendant must have 'purposefully directed its activities at residents of the forum state,' and (ii) that 'the plaintiff's injuries must arise out of the defendant's forum-related activities.'" *Id.* (quoting *Old Republic*, 877 F.3d at 904).

## II.   BACKGROUND

Plaintiff does not object to the magistrate judge's proposed findings of fact and, having defaulted, Defendant is deemed to have admitted the well-pleaded allegations of fact in Plaintiff's complaint. *See CrossFit, Inc. v Jenkins*, 69 F.Supp.3d 1088, 1093 (D. Colo. 2014). Accordingly, the Court adopts and incorporates the findings of fact that are included within the recommendation. (ECF No. 27 at 8-9.) For clarity, the Court will summarize the facts pertinent to this Order.

Plaintiff is a Colorado company, named "Five Star Chemicals & Supply, LLC," which produces cleaning and sanitizing chemicals for use in the food and beverage industry, with a particular focus on breweries. (ECF No. 1.) Plaintiff has used the name and mark "FIVE STAR" to market its products since 1980. It also operates a website at www.fivestarchemicals.com, which domain it has held since at least 2001. Plaintiff obtained a trademark for FIVE STAR in 2009 and, although it was inadvertently abandoned in 2016, Plaintiff again registered the mark in 2018. Plaintiff has spent considerable time, effort, and money to market its products under its trademark.

Defendant is a Georgia company which, while officially named "5 Star Enterprise, Inc.," operates under the name of "5 Star Chemicals." Defendant sells detergent products to the beverage-manufacturing industry, including at least one product that is used to clean brewery equipment. Defendant's website indicates that it does business with a number of national and

international companies including Coca-Cola, Pepsico, and Anheuser-Busch.  Several of those companies have a business presence in Colorado.  Defendant also operates a website at www.5starchemicals.com.

After Plaintiff learned of Defendant's existence, name, and industry involvement, Plaintiff contacted Defendant.  Plaintiff informed Defendant of its existing trademark for the FIVE STAR mark and proposed that the two parties enter into a co-existence agreement under which Defendant would agree not to market its products to the beverage or homebrewing industries.  Defendant acknowledged that there had been some confusion among its customers because of the similar names but nevertheless rejected the requested co-existence agreement, asserting that its sales to the beverage and brewing industries constitute an "integral part" of Defendant's business.

Plaintiff then filed this suit.  Defendant has never filed any pleadings or otherwise responded to this suit at any time.  Plaintiff therefore requested that the Court enter default against the Defendant, which the Clerk did in December 2020.  (ECF No. 14.)  Plaintiff then filed its Motion for Default Judgment, Injunction, and Damages, (ECF No. 16), which this Court referred to the magistrate judge (ECF No. 17).  The magistrate judge issued her recommendation and Plaintiff objected.

**III.    ANALYSIS**

   **A.  Minimum Contacts**

      ***1.  Purposeful availment***

The purpose for determining whether a defendant "purposefully directed" its activities toward the forum state is to "ensure that an out-of-state defendant is not bound to appear to account for merely 'random, fortuitous, or attenuated contacts' with the forum state." *Dudnikov*,

514 F.3d at 1071.  Thus, a plaintiff has the burden of establishing the following in order to demonstrate that a defendant purposefully availed itself of Colorado and its laws: (a) an intentional action, that was (b) expressly aimed at the forum state, with (c) knowledge that the brunt of the injury would be felt in the forum state.  *See Dudnikov*, 514 F.3d at 1072 (citing *Calder v. Jones*, 465 U.S. 783 (1984)).

In this case, Plaintiff has not even alleged that Defendant took an intentional action aimed at Colorado.  In its Objection to the Magistrate Judge's Recommendation it still makes no such argument—Plaintiff notes that its complaint "identified six large corporations (Waste Management, Wal-Mart, Nestle, Coca-Cola, PepsiCo, and Anheuser-Busch) that are customers of Defendant and that have a substantial presence in the State of Colorado."  (ECF No. 28, p.2.)  It asserts that it identified Defendant's customers in order to "establish that Defendant has sold its products to companies in the State of Colorado."  (Id.)  Specifically, it asserts that "because Defendant sells its products to the beverage manufacturing industry, and its clients have manufacturing facilities in Colorado, it is a reasonable inference that some of Defendant's sales to these clients took place in Colorado."  (Id., p.3.)  It notes that it's Complaint alleged that "sales to clients with a substantial presence in the State of Colorado satisfy the minimum contacts test."  (Id. p. 3; ECF No. 1, pp. 3-4.)

Plaintiff's argument, however, is a syllogism—the fact that Defendant has several clients who are prominent in the beverage industry, and the fact that some of those clients also have manufacturing facilities in Colorado, does not prove that Defendant sold its cleaning products to the clients in Colorado, or even that those companies used the products in Colorado.  While it may be true that such sales were made Plaintiff asks the Court to *infer* those sales—as such Plaintiff has failed to carry its "burden 'by demonstrating, via affidavit or other written materials,

facts that if true would support jurisdiction over the defendant.'" *Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159 (10th Cir. 2010) (quoting *TH Agric. & Nutrition, LLC v. Ace European Grp. Ltd.*, 488 F.3d 1282, 1286 (10th Cir.2007)).

### 2. *Internet presence*

Plaintiff's complaint mentions in its discussion of jurisdiction that Defendant's website "is available throughout the United States, including Colorado." (ECF No. 1, p.3.) The 10th Circuit has noted that, because the internet operates, essentially, "'in' every state regardless of where the user is physically located," it has the potential to render "the territorial limits of personal jurisdiction meaningless." *Shrader v. Biddinger*, 633 F.3d 35, 1240 (10th Cir. 2011). In the context of a claim of personal jurisdiction based on an internet presence, therefore, that Court concluded that "it is necessary to adapt the analysis of personal jurisdiction in this unique circumstance by placing emphasis on the internet user or site *intentionally directing* his/her/its activities or operation *at* the forum state rather than just having the activity or operation accessible there." *Id.* (emphasis original). "The maintenance of a web site does not in and of itself subject the owner or operator to personal jurisdiction, even for actions relating to the site, simply because it can be accessed by residents of the forum state." *Id.* at 1241.

In this case, Plaintiff has made no allegations as to whether Defendant intentionally directed its web site at Colorado residents or otherwise intended Colorado residents to receive its messages and advertising. Without more, maintenance of a generally available web site will not support the assertion of personal jurisdiction in this case.

### 3. *Arising out of or relating to forum activities*

Even if the Court could conclude that Plaintiff has made a prima facie case that Defendant has purposefully directed its activities at Colorado, through its web site, and/or sold

its products to its customers in Colorado, for use in Colorado, the Court also concludes that Plaintiff has not demonstrated that this dispute arose out of any such sales. Plaintiff acknowledges in its Complaint that Defendant purports to sell products for use on "floor, vehicle, ink, degreasing or odor control problems" in addition to products used to clean equipment in the beverage manufacturing industry. (ECF No. 1, pp.6-7.) Plaintiff has not made any allegation, however, regarding *what* products were sold to these businesses with a Colorado presence. Absent at least an allegation that Defendant was selling its beverage-related products to the Colorado locations of these companies the Court cannot conclude that this dispute arose out of the contacts between Defendant and Colorado. After all, Plaintiff was not injured if, for example, Defendant sold floor-cleaning products to the Colorado location of the Anheuser-Busch company. The 10th Circuit has noted that an injury cannot be found to have arisen from the forum-related activities "when the plaintiff 'would have suffered the same injury even if none of the [defendant's forum] contacts had taken place.'" *Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 456-57 (10th Cir. 1996) (quoting *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 271-72 (9th Cir. 1995), alterations original).

Plaintiff asks the Court to first infer that Defendant sold some of its products to the Colorado facilities of these national and international companies, and then asks the Court to infer that the specific products sold were those that compete with Plaintiff's own products. It is Plaintiff's burden, however, to demonstrate that this Court has personal jurisdiction over Defendant, and the Court cannot simply find such jurisdiction based on speculation alone.

For all of these reasons, the Court is constrained to conclude, based on the information provided to date, that it lacks personal jurisdiction over Defendant.

### B.  Limited Discovery

Plaintiff asks that, if this Court agrees with the magistrate judge that it lacks personal jurisdiction over Defendant, Plaintiff be given the opportunity to "engage in very limited discovery in the form of requests for admission and interrogatories in order to elucidate further information to support its position."  (ECF No. 28, p.4.)

When a *defendant* has moved to dismiss for lack of personal jurisdiction, "either party should be allowed discovery on the factual issues raised by that motion."  *Budde v. Ling-Temco-Vought, Inc.*, 511 F.2d 1033, 1035 (10th Cir. 1975); *accord GCIU-Employer Retirement Fund v. Coleridge Fine Arts*, 700 Fed.Appx. 865, 871 (10th Cir. 2017) (concluding that the district court abused its discretion when it denied the plaintiff's request to conduct additional discovery on the question of jurisdiction).  The Court can think of no reason why a plaintiff like this one is not entitled to the same opportunity after having been entirely prevented from conducting discovery due to a defendant's refusal to engage in the litigation process.  The Court concludes, therefore, that Plaintiff should be permitted to conduct "very limited discovery" of some form.  The Court therefore grants Plaintiff limited time in which to conduct some discovery and to file supplemental information with this Court.  The Court notes, however, that interrogatories and requests may not be available where a party has failed to enter.

## IV.    CONCLUSION

Based on the foregoing, it is ORDERED

(1)      That Five Star Chemicals & Supply, LLC's Objection (ECF No. 28) is OVERRULED IN PART;

(2)      That the magistrate judge's recommendation (ECF No. 27) is ADOPTED IN PART in accordance with the above Order;

(3)     That Five Star Chemicals & Supply, LLC's Motion for Default Judgment,
Permanent Injunction, Statutory Damages, Costs, Attorneys' Fees, and Other Equitable Relief
Against Defendants 5 Star Enterprise, Inc. (ECF No. 16) is DENIED; and

(4)     That Five Star Chemicals & Supply, LLC shall have until September 30, 2022 in
which to conduct additional, limited discovery into the issue of personal jurisdiction and to file
any supplemental pleadings with the Court.


        DATED this 11th day of August, 2022.

                                        BY THE COURT
:

                                        _____
                                        RAYMOND P. MOORE
                                        United States District Judge